**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MICHAEL RAVER,**                         **CASE NO. 2:06-cv-952**
                                           **JUDGE MARBLEY**
                   **Petitioner,**          **MAGISTRATE JUDGE KEMP**

**v.**

**TIM BRUNSMAN, Warden,**

                   **Respondent.**

**ORDER and
REPORT AND RECOMMENDATION**

On September 7, 2007, the Magistrate Judge issued a *Report and Recommendation* recommending that the instant petition for a writ of habeas corpus be dismissed without prejudice as unexhausted unless petitioner chose to delete his unexhausted claims from the petition and proceed on the remaining exhausted claim of ineffective assistance of counsel due to his attorney's failure to object to the State's motion to consolidate. *See* Doc. No. 14.  On September 17, 2007, petitioner filed a notice requesting to delete all unexhausted claims from the petition and proceed on his sole remaining unexhausted claim. *See Petitioner's Request to Delete Unexhausted Claims*. Petitioner's request, Doc. No. 15, hereby is **GRANTED**.  For the reasons that follow, the Magistrate Judge concludes that petitioner's remaining claim of ineffective assistance of counsel is without merit and therefore **RECOMMENDS** that this action be **DISMISSED**.

**PROCEDURAL HISTORY**

The procedural history of this case is detailed in the Magistrate Judge's *Report and Recommendation,* but is repeated here.  The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

Appellant was charged with multiple incidents of sexual misconduct involving his two stepdaughters, Casey and Melissa. Both children testified at trial regarding incidents occurring in 1999 when visiting their mother and appellant's home on Belvidere Avenue in Columbus.

Casey testified at trial that her date of birth is January 6, 1988, making her 14 years old at the time of trial. In 1999, when Casey was 11 years old, she lived with her grandparents and visited her mother and stepfather every other weekend. During one of her weekend visits in December 1999, Casey testified, appellant touched her in inappropriate places that made her uncomfortable and frightened. This incident occurred while Casey stood next to appellant in front of a computer in appellant's bedroom. No one else was in the room, although Casey's mother and half-brothers were elsewhere in the house. Casey testified that appellant placed his hand on her back, and slid it down into her blue jeans to touch her buttocks and vagina. Casey "didn't feel right" about this touching, and left to go to her bedroom in the basement. Casey testified that she did not tell anyone at the time because she was embarrassed and frightened.

That Christmas, appellant purchased for Casey a long-sleeved "belly shirt" that Casey thought was inappropriately revealing. Casey did not visit her mother and stepfather's home on Belvidere Avenue after that Christmas.

Casey's testimony acknowledges that she at first denied having been sexually abused because she was frightened and embarrassed by the incident. Later, after her sister came forward with similar allegations, Casey came forward herself.

Melissa testified similarly with respect to her visitation schedule with her mother and appellant. Melissa testified that during one of these visits in 1999, when she was 14, appellant followed Melissa down to the basement where her bedroom was located and took her pants off. Appellant then touched her genitals and inserted his finger inside her vagina. Melissa testified that there had been previous occasions upon which appellant had similarly touched her.

Melissa also testified that she was too frightened to say anything at the time. Melissa testified that appellant was a stern disciplinary figure in the home, and that he would whip the children with a belt or otherwise inflict strict punishment. Melissa corroborated Casey's testimony regarding the purchase of an inappropriate shirt for Casey, and testified that she herself had received a fishnet shirt from

2

appellant at Christmas in 1999. Melissa testified that as a result of appellant's actions she is currently in counseling to help her deal with the aftereffect of the molestation.

Appellant testified on his own behalf and asserted his devotion to and affection for his stepdaughters. He denied any sexual conduct or contact with the girls.

The jury returned a verdict of not guilty on the four counts involving Melissa but guilty of two counts of gross sexual imposition in violation of R.C. 2907.05, a felony of the third degree, involving Casey. The trial court denied appellant's request for a pre-sentence investigation. The trial court subsequently sentenced appellant to five years incarceration on each count, the two sentences to be served concurrently. In imposing this maximum sentence, the trial court found that a minimum sentence would demean the seriousness of the offense based on the victim's age, the fact that she was a stepdaughter in appellant's custody and control at the time of the offense, and the demonstrated psychological effect upon the victim. The trial court also found that appellant's acts demonstrated a pattern of abuse and that appellant was likely to re-offend, but that the two counts for which he had been convicted were perpetrated in a single incident, justifying the concurrent sentences.

At the time of sentencing, the trial court conducted a further hearing pursuant to R.C. 2950.09, and found that appellant should be adjudicated a sexual predator, subject to the registration and notification provisions of R.C. Chapter 2950. The trial court again noted the age of the victim, the relationship of appellant to the victim, the demonstrated pattern of abuse, the effect upon the victim, and in addition noted the demonstrated lack of remorse or acceptance of responsibility by appellant.

*State v. Raver*, 2003 WL 723225 (Ohio App. 10 Dist. March 4, 2003), Exhibit K to Return of Writ.

Represented by new counsel, petitioner filed a timely appeal. He raised the following assignments of error:

[1.] The trial court erred when it entered judgment against the defendant for two counts of gross sexual imposition when the evidence was not sufficient to sustain either verdict and the manifest weight of the evidence would not support them.

[2.] The trial court erred in sentencing defendant-appellant to a maximum term of incarceration where the factual criteria to warrant a maximum term was not present and without first considering and rejecting a minimum sentence for defendant-appellant, who has not previously served a prison term.

[3.] The evidence before the trial court was legally insufficient to establish that defendant-appellant was a sexual predator, subject to the lifetime registration and community notification provisions of R.C. 2950.09.

[4.] Defendant-appellant was denied his sixth amendment right to counsel when trial counsel failed to: obtain expert assistance in defending defendant-appellant in the sexual predator hearing; and, make an adequate record of the pertinent aspects of defendant-appellant's history relating to the factors set forth in R.C. 2950.09(B)(2) probative of whether the offender is likely to engage in the future in one or more sexually oriented offenses.

[5.] Mr. Raver's rights to the effective assistance of counsel as guaranteed by the sixth and fourteenth amendments to the United States Constitution and Article I, § 10 of the Ohio Constitution were violated.

*Id.*; Exhibit G to Return of Writ.  On March 4, 2003, the appellate court affirmed the trial court's judgment.  *Id.*  Petitioner never filed an appeal to the Ohio Supreme Court.  However, represented by new counsel, on January 3, 2003, petitioner filed a petition for post conviction relief in the state trial court in which he asserted the ineffective assistance of trial counsel.  Exhibit L to Return of Writ.  On March 16, 2005, the trial court denied the petition.  Exhibit N to Return of Writ.  Still represented by counsel, petitioner filed a timely appeal.  He asserted the following assignment of error:

The trial court erred when it denied Appellant an evidentiary hearing in violation of his rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments of The United States Constitution and Article 1, Sections 1, 2, 9, 10, 16 and 20 of The Ohio Constitution,

4

> when the Appellant submitted documentary evidence dehors the
> record to support his claims.

Exhibit O to Return of Writ.  On February 14, 2006, the state appellate court affirmed the trial

court's dismissal of petitioner's post conviction petition.  *State v. Raver*, 2006 WL 330093 (Ohio

App. 10th Dist. February 14, 2006), Exhibit Q to Return of Writ.   Again represented by counsel,

petitioner filed a timely appeal.  He raised the following proposition of law:

> Counsel in this case did not provide the assistance necessary to
> properly defend a case of sexual impropriety with a child.

Exhibit R to Return of Writ.  On July 5, 2006, the Ohio Supreme Court declined jurisdiction to hear

the case and dismissed the appeal as not involving any substantial constitutional question.  Exhibit

U to Return of Writ.

On November 13, 2006, petitioner filed the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254.  The sole remaining issue for this Court's consideration is petitioner's

claim that he was denied the effective assistance of counsel due to his attorney's failure to object

to consolidation of the charges against him.  The state appellate court rejected this claim as follows:

> With respect to trial counsel's failure to oppose the motion for
> joinder, the ineffective assistance of counsel test set forth in
> *Strickland* can be summarized, in cases involving a failure to make
> a motion on behalf of the defendant or oppose a motion by the state,
> as requiring the defendant to: (1) show that the motion or opposition
> thereto was meritorious, and (2) show that there was a reasonable
> probability that the verdict would have been different had the motion
> been made or opposed. *State v. Santana* (2001), 90 Ohio St.3d 513,
> 739 N.E.2d 798; *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d
> 293.
> Again, it cannot be discerned on this record why trial counsel did not
> oppose joinder, or subsequently seek a severance. Many legitimate
> strategies could justify this position, including the defendant's
> preference for a single trial rather than the "harassment, delay, trauma

and expense of multiple prosecutions ." *State v. Schaim* (1992), 65 Ohio St.3d 51, 58, 600 N.E.2d 661. The defense could also have pursued a strategy that one sister's less-credible testimony might taint that of the other; the jury in fact chose to disbelieve Melissa, and any profit to be gained from Melissa's lack of credibility when attempting to undermine Casey's accusations as well could only be pursued if the charges involving both girls were tried together. In fact, the record does reflect that trial counsel did pursue this tactic of using the opportunity to attack the victims' credibility: "[S]ome place along there Casey gets a chance to talk to Melissa, and all of a sudden Casey is saying something happened * * * all of a sudden, right around this very same time, Melissa's complaint comes up that Mike touched her for the first time inappropriately." (Tr. 100.)

Even if defense counsel had opposed the motion for joinder or subsequently moved for severance, the trial court would have been well within its discretion in maintaining the joinder. "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.' * * * A defendant [moving for severance] under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial * * *." *Lott* at 163, 555 N.E.2d 293, quoting *State v. Torres* (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288.

The state argues in the present case that, even had joinder been opposed, the trial court would properly have ruled that there was no potential prejudice to appellant which would justify severance. Appellant bases his argument for the applicability of severance on the proposition that all charges involving Melissa would be inadmissible under Evid.R. 404(B) in the trial of charges involving Casey, and vice versa. The state counters by asserting that, since Evid.R. 404(B) permits evidence of other acts in order to show the actor's motive and intent, the evidence of molestation as to one child would be admissible as motive or intent to molest the other, even if separate trials were held. For this proposition the state cites *Schaim, supra*. We find that *Schaim* stands, to the contrary, for the proposition that other acts evidence of sexual conduct would be severely limited if the accusations involving two victims in that case had given rise to two separate trials. Testimony of other sexual conduct by the defendant, the Ohio Supreme Court held in *Schaim,* would be limited to the question of the defendant's *purpose* in improperly touching his two young victims in instances in which the defendant freely admitted the

6

touching but denied that it was for the purpose of sexual gratification.
"If appropriately limited, however, this testimony would not include
[the other victim's] testimony concerning the remainder of her father's
alleged sexual acts because the prejudicial value of the additional
testimony would outweigh its probative value." *Schaim,* at 61, 600
N.E.2d 661. Since appellant in the case before us denied any touching
at all, it is the general rule of inadmissibility of other acts set forth in
*Schaim* which applies, not the limited exception carved out therein.
We therefore cannot accept the state's contention that no possible
prejudice to appellant resulted from the failure to oppose joinder,
since all testimony from both victims would have been heard in both
trials even had the matters not been joined.

The conclusion we reach in the present case, in assessing the
effectiveness of trial counsel, is not that there was no *potential* risk
for appellant from trying the cases together, but that there were
concomitant advantages to going forward in a single proceeding, and
that, ultimately, no *actual* prejudice to appellant can be shown based
upon the outcome of the trial. As stated above, the possibility that one
sister's lack of credibility might undermine the testimony of the other
cannot be disregarded; in fact the jury found one sister not credible.
Although this ultimately did not avoid conviction on the charges
involving Casey, Melissa's lack of credibility could certainly have
benefited [sic] appellant in the charges against Casey. Ultimately, the
outcome of the trial obviated any possibility of prejudice to appellant;
had appellant been convicted of charges involving both sisters, some
prejudice could be argued, but the actual outcome in the present case
simply does not support the proposition that one sister's less than
credible testimony bolstered the jury's willingness to convict on
charges involving the other sister. No ineffective assistance of trial
counsel can be shown in this respect.

*State v. Raver*, 2003 WL 723225 (Ohio App. 10 Dist. March 4, 2003), Exhibit K to Return of Writ.

Petitioner later raised this same claim in post conviction proceedings, with the supporting affidavit

of his appellate attorney, James D. Owen, which provides in relevant part as follows:

On November 6, 2002, I met with the Defendant-Petitioner Michael
Raver and asked him whether he was aware of the fact that the State
had filed a motion to consolidate his two cases for trial.  He stated

7

that he was not aware of that fact before or during his trial.  He further stated that he would have liked to have had separate trials, and there was no reason why he would have even considered having the cases joined into one trial.  Mr. Raver further stated that none of his attorneys advised him of the option of having separate trials.

On November 18, 2002, I spoke to David L. Kentner, trial attorney for Michael Raver.  Mr. Kentner told me there was no strategic reason for him not to attempt to try the cases of the two separate victims.... Mr. Kentner asked me whether I thought Mr. Raver was entitled to have separate trials.  I told him there was a 1992 Ohio Supreme Court case on point.  Mr. Kenter [sic] asked me to provide him with the citation to the case, which I later did (*State v. Schiam*, 65 Ohio St.3d 51 (1992).

*Affidavit of James D. Owen*, Exhibit L to Return of Writ.  The state appellate court again rejected

the claim as follows:

Defendant-appellant, Michael E. Raver ("appellant"), appeals from the denial of his petition for post-conviction relief by the Franklin County Court of Common Pleas. Appellant's petition sought to vacate his May 8, 2002 judgment of conviction and sentence of the Franklin County Court of Common Pleas, pursuant to a jury verdict, finding him guilty on two counts of gross sexual imposition. The charges against appellant arose from allegations by his stepdaughters, M.S. and C.S., that appellant had sexually molested them. While the state initially filed the charges in two separate cases against appellant, the state moved to join the cases for purposes of trial. Appellant's trial counsel did not oppose the state's motion, and the court granted joinder. The jury ultimately convicted appellant of two counts of gross sexual imposition against C.S., but acquitted him of the charges relating to M.S.

Appellant appealed his conviction and sentence to this court. Appellant raised five assignments of error, one of which is important for our purposes here. In his fifth assignment of error, appellant argued to this court that his constitutional right to counsel had been violated. In support, appellant argued that his trial counsel had not rendered effective assistance because counsel: (1) failed to oppose the state's motion to consolidate the two cases for trial....

\*\*\*

In support of his petition before the trial court, appellant attached the affidavit of Attorney James D. Owen, his appellate counsel. Owen's affidavit states that he had spoken to appellant, who told him that he was unaware that the state had moved to consolidate his cases for trial, that he would have liked to have separate trials, and that none of his attorneys had advised him of the option of having separate trials. The affidavit also states that Owen had spoken to Attorney David Kentner, one of appellant's trial counsel. The affidavit states: "Mr. Kentner told me there was no strategic reason for him not to attempt to try the cases of the two separate victims" separately.

\*\*\*

... The United States Supreme Court established a two-prong test for ineffective assistance of counsel. *Strickland v.. Washington* (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. *Id*. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Id.* Moreover, a defendant must overcome a strong presumption that the challenged action constitutes trial strategy. *State v. Carter* (1995), 72 Ohio St.3d 545, 558.

\*\*\*

In order to succeed on a claim of ineffective counsel, appellant must show not only that counsel's performance was deficient, but also that counsel's deficient performance prejudiced him and deprived him of a fair trial. Here, even if we were to accept as fact the assertions made in the affidavit-appellant had no knowledge of the opportunity to avoid consolidation, and his trial counsel had no strategic reason to try the cases together-appellant could not make the necessary showings. In affirming his conviction, this court has already determined that appellant suffered no prejudice from consolidation of the charges. This court found, at ¶ 67:

The conclusion we reach in the present case, in assessing the effectiveness of trial counsel, is not that there was no *potential* risk for appellant from trying the cases together, but that there were concomitant advantages to going forward in a single proceeding, and

that, ultimately, no *actual* prejudice to appellant can be shown based upon the outcome of the trial. As stated above, the possibility that one sister's lack of credibility might undermine the testimony of the other cannot be disregarded; in fact the jury found one sister not credible. Although this ultimately did not avoid conviction on the charges involving [C.S.], [M.S.'s] lack of credibility could certainly have benefitted appellant in the charges against [C.S.]. Ultimately, the outcome of the trial obviated any possibility of prejudice to appellant; had appellant been convicted of charges involving both sisters, some prejudice could be argued, but the actual outcome in the present case simply does not support the proposition that one sister's less than credible testimony bolstered the jury's willingness to convict on charges involving the other sister. No ineffective assistance of trial counsel can be shown in this respect.

(Emphasis sic.)

Thus, appellant's post-conviction petition presented no evidence that could have altered this court's finding on appeal that appellant suffered no prejudice from his trial counsel's failure to oppose a motion by the state to join the two cases for trial.

Exhibit Q to Return of Writ.

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e) provides:

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, habeas corpus relief may be granted only where the state court's decision was contrary to or an unreasonable application of federal law, or an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

> granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005). Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

11

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Petitioner argues that the Owen affidavit establishes that trial counsel had no strategic reason for failing to oppose consolidation of charges against him, and that he was prejudiced by testimony from two victims at one trial. The Court notes it appears from the record that petitioner was represented by more than one attorney at trial. *See Affidavit of James D. Owen*, Exhibit L to Return of Writ; Exhibits C and D to Return of Writ. Conceivably, therefore, one of those attorneys knew that petitioner could oppose the State's motion to consolidate charges against him, and of the strategic reasons for not doing so. In any event, nothing in the record reflects that the trial court would have denied the State's motion to consolidate the charges against petitioner for trial, had petitioner objected to such request. To the contrary, the state appellate court stated in its dismissal of petitioner's claim that consolidation of charges was proper under Ohio law:

Even if defense counsel had opposed the motion for joinder or

12

subsequently moved for severance, the trial court would have been well within its discretion in maintaining the joinder. "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.' * * * A defendant [moving for severance] under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial * * *." *Lott* at 163, 555 N.E.2d 293, quoting *State v. Torres* (1981), 66 Ohio St.2d 340, 421 N.E.2d 1288.

*State v. Raver, supra*, Exhibit K to Return of Writ.  Federal courts agree that the denial of a motion

for severance does not deprive a criminal defendant due process unless

misjoinder rendered the trial fundamentally unfair. *Hollands v. Department of Corrections*, 969 F.2d 606 (8th Cir. 1992); *United States v. Lane*, 474 U.S. 438, 449... (1986) as cited in *United States v. Chavis*, 296 F.3d 450 (6th Cir. 2002).  Thus, misjoinder reaches constitutional dimensions only if it makes a state trial unfairly violative of due process. *Herring v. Meachum*, 11 F.3d 374 (2d Cir. 1993).

A claimant must show more than the potential for prejudice; he must prove that actual prejudice occurred at trial. *Opper v. United States*, 348 U.S. 84... (1954).  Thus, [a] Petitioner has no relief under 28 U.S.C. §2254 unless the consolidation actually rendered the petitioner's state trial fundamentally unfair and violative of due process. *Tribbitt v. Wainwright*, 540 F.2d 840 (5th Cir. 1976), cert. Denied, 430 U.S. 910... (1977); *Lucero v. Kerby*, 133 F.3d 1299 (10th Cir. 1998); *Robinson v. Wyrick*, 738 F.2d 1091 (8th Cir. 1984).  The granting or denying of severance is within the trial judge's discretion. *Glinsey v. Parker,* 491 F.2d 337 (6th Cir. 1974).

*Dowell v. Eckman*, unpublished, 2006 WL 228933 (W.D.Ky. January 25, 2006).  While testimony

of both of the alleged victims may not have been admissible under Ohio law in separate trials, *see*

*State v. Raver, supra, citing State v. Schaim, supra*, petitioner does not dispute the state appellate

court's finding that defense counsel used consolidation of charges to his advantage by pursuing the

13

tactic of attacking the credibility of the more credible victim by pointing out that her accusations arose upon speaking to her less credible sister.  *See State v. Raver, supra;* Exhibit K to Return of Writ.  Also, the jury returned a verdict of not guilty on all counts involving one of the alleged victims.  Contrary to petitioner's argument here, under these circumstances, the record therefore fails to reflect that the jury was unable to separate and consider independently the charges against him.  For all of the foregoing reasons, this Court agrees that petitioner has failed to establish prejudice under *Strickland*.

> [T]he defendant affirmatively [must] prove prejudice.... Attorney errors ...  are as likely to be utterly harmless in a particular case as they are to be prejudicial.... Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.
>
> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *cf. United States v. Valenzuela-Bernal*, 458 U.S. 858, 866-867, 102 S.Ct. 3440, 3446-3447, 73 L.Ed.2d 1193 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding....
>
> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> In making the determination whether the specified errors resulted in the required prejudice, a court should presume... that the judge or jury acted according to law...

*Strickland, supra,* 466 U.S. at 693-94.  Petitioner likewise has failed to establish that the state court's decision rejecting his claim of ineffective assistance of counsel is unreasonable so as to justify federal habeas corpus relief.  *See Williams v. Taylor, supra.*

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge